IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRUCE GILES, Inmate #K-96600,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 12-965-JPG |
| | ) |
| **GLADYSE C. TAYLOR,** | ) |
| **S.A. GODINEZ, NEDRA CHANDLER,** | ) |
| **DIRK DUSING,** | ) |
| **MICHAEL CALLAHAN,** | ) |
| **RICHARD S. BIRKLEY,** | ) |
| **LEONTA L. JACKSON,** | ) |
| **RON ZESSIN,** | ) |
| **WARDEN RANDY PFISTER,** | ) |
| **MICHAEL LEMKE, MARC HODGES,** | ) |
| **MARK STORM,** | ) |
| **RANDY STEVENSON, and** | ) |
| **SANDRA FUNK,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

   Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendants were deliberately indifferent to his serious mental health condition during his confinement in three different prisons.  In addition, he was subjected to unsanitary and inhumane conditions of confinement, was attacked by a fellow inmate, and his grievances were ignored.

   More specifically, Plaintiff claims that after his conviction, he was initially housed at Dixon Correctional Center ("Dixon"), where he received satisfactory treatment for his serious mental illness (Doc. 1, pp. 6-7).  His living area was under constant supervision by officers

trained in dealing with mentally ill prisoners, and by mental health specialists; he received daily counseling, regular psychotropic prescription medications, and had access to other therapy. However, in September 2010, he was transferred to Illinois River Correctional Center ("IRCC"), in retaliation for having filed grievances while in Dixon (Doc. 1, p. 7).

      At IRCC, Plaintiff received no therapeutic services, did not regularly receive his prescription medications (for example, none were provided for two weeks after his transfer), and was housed in the general population together with non-mentally ill inmates who threatened him with violence.  He contends that his status as a mentally ill inmate made him a target for threats and potential attacks.  As a result of living under these conditions, his symptoms, including hearing negative voices, anger, paranoia, depression, poor sleep, anxiety, agitation, and headaches, became worse.  During a brief stay at Stateville Correctional Center ("Stateville") while on a court writ, he became suicidal.  Staff there restored his medications and recommended he be returned to Dixon because of his mental condition (Doc. 1, p. 8).  Instead, he was returned to IRCC, where his medications were again denied until he finally saw a nurse (Doc. 1, p. 10). Plaintiff's grievances over the transfer and lack of treatment were ignored.  On March 4, 2011, another inmate threatened to kill Plaintiff and spit in his face.  Plaintiff pushed the other inmate, and Plaintiff was then taken to segregation.  His mental state deteriorated and he attempted suicide, but his cellmate intervened to stop him.  He was kept in segregation for a time, then was transferred to Pontiac Correctional Center ("Pontiac") (Doc. 1, p. 12).

      At Pontiac, the pattern of failure to treat Plaintiff's mental illness continued.  He did not consistently receive his prescription medications, had no therapy, had no monitoring despite his documented suicidal history, and was housed in a cell where mice and insects "were allowed to

run freely" (Doc. 1, p. 13).  Under these conditions, Plaintiff's psychological and physical symptoms worsened (Doc. 1, p. 14).  In September 2011, Plaintiff was transferred to Lawrence.

Plaintiff's mental health treatment at Lawrence was similarly inadequate.  He might receive one-on-one counseling once every four to five weeks if he was "lucky" (Doc. 1, p. 15).  He did not consistently receive his medications, and experienced "discrimination" by officers who were not trained in dealing with mentally ill prisoners, and by other inmates.  In February 2012, he was attacked and physically injured by another inmate and was sent to segregation (Doc. 1, pp. 16-17).  His mental condition deteriorated, and he again attempted suicide in July 2012.  Again, his cellmate intervened as there was no monitoring by staff, despite Plaintiff's known history of suicidal tendencies.  Plaintiff also complains that at Lawrence, he has been denied privileges that he enjoyed while at Dixon, including access to the day-room twice a day, daily shower, telephone, library, yard, and gym privileges, non-timed toilets, and prison employment (Doc. 1, pp. 15, 24).  Even worse, his housing area at Lawrence is infested with mice, roaches, and insects, which have invaded Plaintiff's property boxes and damaged his belongings (Doc. 1, p. 28).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendants Godinez, Birkley, Jackson, Zessin, Pfister, Lemke, Hodges, Storm, and Stevenson, for a continuing pattern, practice, and policy of deliberate indifference to Plaintiff's serious mental health needs during his incarceration at IRCC, Pontiac, and Lawrence (Count 1); against Defendants Pfister, Lemke, Hodges, Storm, and Stevenson for failing to remedy the vermin infestation in Plaintiff's cell at

Pontiac and Lawrence (Count 2); and against Defendants Hodges, Storm, and Stevenson for failure to protect Plaintiff from the February 2012 inmate attack (Count 3).

However, Plaintiff fails to state a constitutional claim for the failure to provide him with daily access to the yard, gym, showers, and other amenities (Count 4), or for prison officials' failure to respond to his grievances (Count 5), for the reasons to follow. Additionally, although Plaintiff may have a viable retaliation claim (Count 6) against the official who allegedly transferred him away from Dixon because he filed grievances, the complaint does not identify who committed the act of retaliation, and thus fails to state a claim. Without more information, the Court cannot determine whether the retaliation claim is viable, and if so, whether it should remain in the present action or be severed into a separate case. Plaintiff shall have an opportunity to submit an amended complaint if he wishes to further pursue the claims in Count 4 and Count 6.

As to Count 4, Plaintiff does not have a claim for unconstitutional conditions of confinement merely because the more frequent access to the yard, day-room, showers, library, and other privileges that he enjoyed at Dixon was not available at the other prisons where he has been confined. Only objectively serious deprivations of basic human needs like food, medical care, sanitation, and physical safety will trigger an Eighth Amendment claim. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). For example, courts have held that short periods of exercise denial do not violate the Constitution. *See Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not unconstitutional); *Phillips v. Norris*, 320 F.3d 844 (8th Cir. 2003) (37 days in segregation without exercise "is perhaps pushing the outer limits of acceptable restrictions" but does not

create atypical and substantial hardship); *Vinson v. Texas Bd. of Corr.*, 901 F.2d 474, 475 (5th Cir. 1990) (occasional denial of recreation claims were frivolous).  Here, Plaintiff has alleged only that he has not been allowed to visit the yard or gym as often as he could while in Dixon. He has not claimed that he was deprived of the opportunity to exercise for any significant length of time, let alone long enough to rise to the level of a constitutional deprivation.

Likewise, Plaintiff has not claimed that the lack of a daily shower, general library access, telephone, or prison employment has caused him any harm of constitutional dimension. Therefore, the conditions claims in Count 4 shall be dismissed without prejudice.  However, if facts exist to support an unconstitutional denial of exercise, Plaintiff may include those allegations in an amended complaint, which must be filed within 35 days.  If an amended complaint is filed that fails to state a claim on this point, or if Plaintiff does not submit an amended complaint, the dismissal of Count 4 shall become a dismissal with prejudice.  The amended complaint shall be subject to review pursuant to § 1915A.

The Defendants' failure to respond to Plaintiff's grievances (Count 5), in and of itself, does not amount to a constitutional claim.  "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  Count 5 shall therefore be dismissed with prejudice.  However, the substantive issue of whether the Defendants violated Plaintiff's constitutional rights (as alleged in his grievances) shall be addressed in the surviving Counts 1, 2, and 3.

Although Plaintiff alleges (Count 6) that he was transferred away from Dixon in September 2010 in retaliation for having filed grievances there, he never identifies any Defendant who allegedly took that retaliatory action (Doc. 1, pp. 6-7). He has not stated any other claim against any Dixon officials, and they shall be dismissed from the action. If Plaintiff wishes to pursue this retaliation claim, he must file an amended complaint within 35 days, stating the factual basis for this claim and identifying the responsible party or parties. Because the claim arose in the Northern District of Illinois, where Dixon is located, it may be necessary for the retaliation count to be severed from this action and transferred to the Northern District, if the amended complaint sufficiently states a claim. As noted above, if no amended complaint is submitted or if it fails to state a retaliation claim, the dismissal of Count 6 shall become a dismissal with prejudice.

Finally, Defendants Chandler, Dusing, Callahan, and Funk shall be dismissed from the action without prejudice. Plaintiff has made no actionable allegations of wrongdoing against any of these Defendants. Defendant Taylor, the former acting director of the IDOC, shall be dismissed with prejudice. The current IDOC Director, Defendant Godinez, remains in the action at this time.

**Pending motions**

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Philip M. Frazier for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART**. Plaintiff has paid the filing fee for this action in full, and the Clerk shall be directed below to serve the parties who remain in the action.

Plaintiff's motion for extension of time to pay the filing fee (Doc. 8) is **DENIED AS MOOT**. The filing fee payment was received timely.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 4 and 6** are also **DISMISSED**, but the dismissal is without prejudice at this time. Plaintiff may submit an amended complaint as outlined below if he wishes to pursue these claims further.

**DEFENDANT TAYLOR** is **DISMISSED** from the action with prejudice. **DEFENDANTS CHANDLER, DUSING, CALLAHAN,** and **FUNK** are **DISMISSED** from the action without prejudice.

**IT IS FURTHER ORDERED** that, should he wish to proceed on his claims in **COUNT 4** (deprivation of exercise) and/or **COUNT 6** (retaliatory transfer from Dixon), Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support these claims and naming the individual Defendants directly responsible for the alleged deprivations, within 35 days of the entry of this order (on or before December 6, 2012). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, and in addition to the restated claims in Count 4 and/or Count 6, must contain the allegations in Counts 1, 2, and 3, which shall receive further review as determined above. Should the First Amended Complaint not conform to these requirements, it shall be stricken. The First Amended Complaint is subject to review pursuant to 28 U.S.C. §

1915A.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of Counts 4 and 6 becoming a dismissal with prejudice.   Review of Counts 1, 2, and 3 shall proceed whether or not Plaintiff submits an amended complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

The Clerk is **DIRECTED** to (1) issue summons to Defendants **GODINEZ, BIRKLEY, JACKSON, ZESSIN, PFISTER, LEMKE, HODGES, STORM**, and **STEVENSON**, (2) prepare, on Plaintiff's behalf, a form USM-285 for each Defendant, and (3) deliver service packets for each Defendant, consisting of the completed summons, a USM-285 form, a copy of the complaint, and a copy of this Memorandum and Order to the United States Marshal Service. The United States Marshal **SHALL**, pursuant to Federal Rule of Civil Procedure 4, personally serve upon each Defendant the summons, a copy of the complaint, and a copy of this Memorandum and Order.  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshal Service.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   November 1, 2012

    *s/J. Phil Gilbert*
    **United States District Judge**